# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HOMER WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 15 C 8106<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Homer Williams filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Plaintiff has filed a request to reverse the ALJ's decision and remand for additional proceedings. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover SSI, a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001).[1] A

---

[1] The regulations governing the determination of disability for SSI are found at 20 C.F.R. § 416.901 et seq. The standard for determining SSI DIB is virtually identical to that

person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

used for Disability Insurance Benefits (DIB). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff protectively applied for SSI on August 1, 2012,[2] alleging that he became disabled on February 7, 1996, due to a gunshot wound in the right leg, depression, high blood pressure, and seizures. (R. at 17, 156, 175, 179). The application was denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 17, 60–78, 99). On February 4, 2014, Plaintiff, who was represented by counsel, testified at a hearing before Roxanne J. Kelsey, an Administrative Law Judge (ALJ). (*Id.* at 17, 34–59). The ALJ also heard testimony from George B. Paprocki, a vocational expert (VE). (*Id.* at 17, 51–59, 146).

The ALJ denied Plaintiff's request for benefits on April 24, 2014. (R. at 17–28). Applying the five-step sequential evaluation process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since August 1, 2012, the application date. (*Id.* at 19). At step two, the ALJ found that Plaintiff's abscess on right thigh, seizures, history of gunshot wound to the right leg, polysubstance dependence in remission, mood disorder, and antisocial personality disorder are severe impairments, but that hypertension is not. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.* at 19–22).

---

[2] A claimant is issued a protective filing date when he files a written statement with the Social Security Administration that indicates an intent to file a claim for benefits. 20 C.F.R. § 416.340.

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and determined that he can perform medium work, except he

> can never climb ladders, rope or scaffolds; and no more than occasional concentrated exposure to hazards such as dangerous, moving machinery or unprotected heights. [Plaintiff] lacks the ability to understand, remember and carry out detailed instructions, but retains the sustained concentration necessary for simple work. [Plaintiff] may have occasional brief and superficial contact with the general public.

(*Id.* at 22). The ALJ determined at step four that Plaintiff has no past relevant work. (*Id.* at 26). Based on Plaintiff's RFC, age, education, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including warehouse worker and industrial cleaner. (*Id.* at 27–28). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability, as defined by the Act. (*Id.* at 28).

The Appeals Council denied Plaintiff's request for review on July 17, 2015. (R. at 1–5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regula-

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

tions. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id*. The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id*. (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotes and citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (internal quotes and citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate deter-

mination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

## IV. RELEVANT MEDICAL EVIDENCE

Plaintiff has a history of a right upper femur fracture with an internal fixation surgery, a right leg gunshot wound, and a bullet wound in the pelvis area. (R. at 475, 612, 628). In August 2011, while incarcerated at Sheridan Correctional Center, Plaintiff complained of a painful boil on his right leg. (*Id.* at 309, 311). A moderate amount of bloody drainage was noted on August 26. (*Id.* at 311). On August 29, a large amount of greenish/bloody drainage was seen. (*Id.*). Over subsequent visits, the wound continued to drain. (*Id.* at 312–41).

Plaintiff completed a Function Report on September 1, 2012. (R. at 196–206). He asserted that the pain associated with the plate in his leg prevents him from standing very long and makes it difficult to sleep. (*Id.* at 196–97). The pain also affects his ability to lift, squat, bend, and kneel. (*Id.* at 201). He is able to mow the grass and shop. (*Id.* at 198–99).

On November 1, 2012, Plaintiff was seen at the Provena Saint Joseph Medical Center emergency department, where his right thigh abscess was treated with incision, drainage and packing. (R. at 569–70). He returned two days later to have the packing removed. (*Id.* at 573). On November 15, he followed up at the Will County Community Health Center, where his chronic abscess was noted to be draining and

improving. (*Id.* at 578). On December 28, his abscess was found to be "resolved." (*Id.* at 589–90).

On January 27, 2013, he returned to the Saint Joseph ER, complaining of recurrent right thigh abscess, which had started draining that morning. (R. at 612). On discharge, he was diagnosed with right thigh abscess status post irrigation, draining, and packing, and prescribed with an antibiotic. (*Id.* at 613). On January 29, Plaintiff reported that the wound was healing and his pain had "improved dramatically." (*Id.* at 614). On examination, the wound appeared to be healing and the packing was removed. (*Id.*). Matthew W. Nitsche, M.D., concluded that the wound would "heal up slowly over time." (*Id.*).

Plaintiff returned to the ER on April 7, 2013, complaining that his right thigh abscess had been draining for about a month. (R. at 624). He followed-up at Aunt Martha's Health Center a week later, indicating that he was still on medication from the ER visit but reporting little improvement. (*Id.* at 627). There was no draining, erythema or inflammation at the abscess site. (*Id.*). He also complained of constant 6/10 pain, which was aggravated by standing. (*Id.*).

On July 9, 2013, Plaintiff was treated in the ER for chronic right thigh abscess, which had recently recurred and begun draining. (R. at 628). He was on an antibiotic but ran out a month ago. (*Id.*). On examination, Plaintiff had full range of motion and walked with a normal gait. (*Id.*). He was released in good condition and prescribed Bactrim, Cipro, and Ultram and advised to follow up with Aunt Martha's Clinic within two days. (*Id.* at 628–29). A month later, Plaintiff went to the ER

complaining of a boil on his right leg; he was assessed with cellulitis, underwent irrigation, draining, and wound packing. (*Id.* at 642–43). He returned on August 11 for a wound check and packing removal, reporting moderate to severe pain but only 2–3/10. (*Id.* at 644–48). On September 12, Plaintiff complained of depression and chronic pain. (*Id.* at 640). He was prescribed hydrocodone and advised to follow up with Aunt Martha's Clinic. (*Id.* at 640–41). On September 14, he went to the ER because of his right thigh abscess. (*Id.* at 633). He was prescribed Bactrim and Amoxicillin, advised to follow-up with his primary care provider, and to return to the ER in two days for a wound check and suture removal. (*Id.*). On September 16, he was seen in the ER for a wound check and advised to follow up with Aunt Martha's Clinic and a general surgeon as soon as possible. (*Id.* at 635).

On September 24, Plaintiff complained of constant, 10/10 pain in his right thigh that is alleviated somewhat with medications and aggravated by walking or direct contact. (R. at 659). On December 13, Plaintiff complained of constant pain, which he rated at 5/10 and described as a sharp, stabbing, shooting sensation. (*Id.* at 657). The pain is aggravated by bending, standing or walking, and relieved with heat, rest, and sitting. (*Id.*).

Plaintiff testified that he is unable to work because of chronic leg pain due to a bullet wound, which he rates at 7/10. (R. at 37, 43, 48). He also has had a chronic abscess since 2011 that flares-up and drains every few weeks. (*Id.* at 38–39). He is able to walk only a few blocks before needing to sit and rest. (*Id.* at 41–42, 44). He

can sit or stand only for 20–30 minutes before needing to change positions. (*Id.* at 44, 48).

IV. ANALYSIS

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Dkt. 15 at 5). Specifically, he asserts that that the ALJ's (1) step three finding was not supported by substantial evidence, (2) credibility assessment was legally improper and insufficient, and (3) step five finding lacked evidence that Plaintiff can perform jobs that exist in sufficient numbers. (*Id.*).

### A. Substantial Evidence Supports the ALJ's Conclusion That Plaintiff Fails To Meet the Criteria for Listings 1.08 and 8.04C

At step three, the ALJ determined that during the relevant time period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of Listings 1.08, 8.04, 11.00, 12.04, 12.08, and 12.09. (R. at 19–22). Plaintiff challenges the ALJ's finding as to Listings 1.08 and 8.04C, arguing that the ALJ's conclusion lacks evidentiary support. (Dkt. 15 at 8–9). The Court disagrees.

Although the ALJ's discussion of Listings 1.08 and 8.04 was short, she considered the opinion of the state-agency consultants who, after reviewing the medical file, concluded that Plaintiff's impairments failed to meet any of the listings. (R. at 20, 60–67, 69–77). "This discussion provides the necessary detail to review the ALJ's step 3 determination in a meaningful way. We do not discount it simply because it appears elsewhere in the decision. To require the ALJ to repeat such a dis-

cussion throughout his decision would be redundant." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015).

Plaintiff contends that because the state-agency consultants failed to mention his leg abscess, the ALJ "had no expert opinion to rely on . . . and improperly played doctor to reach her conclusion." (Dkt. 15 at 9). To the contrary, the ALJ may properly rely upon the opinions of nonexamining, state-agency consultants at the initial and reconsideration levels of administrative review to determine whether a claimant meets or medically equals *any* listing. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004); *see Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) ("Two state-agency physicians concluded that Knox's impairments did not meet or medically equal a listing, and there was no medical opinion to the contrary."). Here, the state-agency physicians reviewed the record and concluded that Plaintiff's ailments do not meet *any* listing. (R. at 60–77).

In any event, Plaintiff has failed to meet *his burden* to demonstrate that his impairments satisfy all the requirements of Listing 1.08 or 8.04C. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (The claimant "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing."); *Knox*, 327 F. App'x at 655 (The "claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing."). He does not identify *any* medical evidence that satisfies the listing criteria, particularly the duration requirements. In sum, the ALJ's step three determination is supported by substantial evidence.

**B. The ALJ's Credibility Determination Is Patently Wrong**

The Social Security Administration determined recently that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of [the claimant's] symptoms." Social Security Ruling (SSR) 16-3p, at *2.[4] "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symp-

---

[4] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

toms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.

An ALJ's credibility determination may be overturned only if it is "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 16-3p, like former SSR 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted).

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

Plaintiff testified that he is unable to work because of a bullet in his leg that hurts most of the time. (R. at 37). He can sit for only 30 minutes before needing to get up. (*Id.* at 44). He can stand for about 30 minutes and walk four blocks before having to sit down. (*Id.* at 44–45). He has trouble concentrating and focusing and can sleep only four to five hours at night. (*Id.* at 50). Plaintiff also suffers from headaches and a nonhealing abscess. (*Id.* at 38–39).

In her decision, the ALJ found that Plaintiff's allegations "are not entirely credible." (R. at 23); (*see also id.* at 26) (finding that Plaintiff's "allegations regarding the limiting effects and the severity of the symptoms of his impairments are only partially credible"). Specifically, the ALJ observed that (1) Plaintiff seldom complained about any odor or significant pain connected with his abscess, (2) no inpatient treatment was required for his abscess, and (3) Plaintiff's symptoms were exaggerated when seeking help with his disability paperwork. (*Id.* at 23–26).

Under the circumstances, none of the reasons provided by the ALJ for rejecting Plaintiff's credibility are legally sufficient or supported by substantial evidence.

First, the ALJ's analysis is largely a summary of the medical evidence without explaining how it undermines Plaintiff's testimony. *Norris v. Astrue*, 776 F. Supp. 2d 616, 633 (N.D. Ill. 2011) ("Unfortunately in this case, . . . we are left to ponder the exact reasons for the ALJ's findings. In her decision, the ALJ summarized the history of plaintiff's medical treatment and recounted plaintiff's testimony regarding her daily activities, all of which are relevant to a credibility determination. The ALJ, however, did not provide analysis and reasons as to why she found plaintiff not to be credible.") (citation omitted). Indeed, the ALJ's analysis "yields no clue to what weight the trier of fact gave [the] testimony." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). The ALJ does not explain which of Plaintiff's allegations were credible, which were incredible, or provide reasoning in support of her findings. *See Groneman v. Barnhart*, No. 06 C 0523, 2007 WL 781750, at *11 (N.D. Ill. March 9, 2007) ("The ALJ may have provided a *reason* for rejecting [the claimant's] allegations—because he did not seek treatment and follow through with medication—but he did not provide *reasoning*.") (emphasis in original). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *9.

Second, the ALJ's conclusion that Plaintiff's impairments must not be as serious as alleged because his abscess is not accompanied by odor or in-patient care is not supported by any medical evidence. There is no opinion testimony or other medical

evidence to suggest that an abscess is debilitating only when accompanied by odor and managed with in-patient care. Although the Court recognizes that the ALJ's opinion is entitled to considerable deference, such deference does not extend to her "playing doctor." *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("We have recognized that an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Further, the ALJ's reasoning seemingly minimizes that his abscess has landed Plaintiff in the emergency room at least nine times, he has consistently complained of chronic pain, and is constantly on antibiotics to combat his infections. (R. at 569–70 (emergency room), 612–13 (antibiotics), 624 (emergency room), 627 (constant pain aggravated by standing), 628 (emergency room), 642–43 (same), 646 (moderate to severe pain), 640 (prescribed hydrocodone to treat chronic pain), 633 (antibiotics), 657 (constant pain)).

Third, the ALJ does not provide clear and convincing reasons for rejecting the intensity and persistence of a claimant's symptoms merely because he was seeking disability, which required his doctor to submit relevant paperwork. *See Ryan v. Comm'r*, 528 F.3d 1194, 1199–200 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."); *see*

*also McClinton v. Astrue*, No. 09 C 4814, 2012 WL 401030, at *12 (N.D. Ill. Feb. 6, 2012) ("[S]imply because [Plaintiff] was seeking disability and required such paperwork does not mean that the doctor's treatment was any less legitimate. The ALJ simply fails to explain how the completion of necessary paperwork for a patient, however frequent, mitigates the credibility or accuracy of a treating doctor's medical opinion."). Here, Plaintiff's doctor did not dismiss Plaintiff's symptoms merely because he was seeking help with disability paperwork. (*See* R. at 657). The ALJ is attempting to read something into the record that is simply not there.

Finally, even if the ALJ properly discounted the extent to which Plaintiff's abscess was debilitating, the ALJ's analysis does not address the pain associated with the bullet wound in Plaintiff's leg. *Moon*, 763 F.3d at 721 ("the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination"). Plaintiff has a history of a right upper femur fracture with an internal fixation surgery, a right leg gunshot wound, and a bullet wound in the pelvis area. (R. at 475, 612, 628). Plaintiff testified that he has constant leg pain from his wounds, which affects his ability to sit, walk, and stand. (*Id.* at 37, 42–48). He also asserted that the pain associated with the plate in his leg prevents him from standing very long and makes it difficult to sleep. (*Id.* at 196–97). The pain affects his ability to lift, squat, bend, and kneel. (*Id.* at 201). The pain associated with Plaintiff's bullet wounds would have little to do with whether his abscess has an odor and requires in-patient treatment. Without a discussion of these relevant factors, the ALJ failed to build a logical bridge between the evidence and her conclu-

sion that Plaintiff's testimony was not credible. *Shauger v. Astrue*, 675 F.3d 690, 697–98 (7th Cir. 2012) (ALJ failed to build a logical bridge between the claimant's allegations of debilitating headache pain and her conclusion that the claimant's testimony was not credible); *Phillips v. Astrue*, 413 F. App'x 878, 887 (7th Cir. 2010) ("what is more unsettling is the ALJ's failure to mention record evidence that was plainly relevant to the question of Phillips's credibility").

The Court finds the ALJ's credibility determination "patently wrong." *Craft*, 539 at 678. On remand, the ALJ shall reevaluate Plaintiff's complaints with due regard for the full range of medical evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

## C. Other Issues

Because the Court is remanding to reevaluate Plaintiff's credibility, the Court chooses not to address Plaintiff's other argument that the ALJ's step five finding is not supported by substantial evidence. (Dkt. 15 at 9–11). On remand, after determining Plaintiff's credibility, the ALJ shall reevaluate Plaintiff's physical and mental impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). Finally, with the assis-

tance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's request for summary judgment is **GRANTED**, and Defendant's Motion for Summary Judgment [18] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: November 17, 2016

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge